Dear Mr. Lane:
Our office received an opinion request from you regarding the applicability of Louisiana Open Meetings Law to the competitive selection process for professional service contracts by the Office of the Mayor and the New Orleans City Council (Council). Your letter states that the Mayor of the City of New Orleans, pursuant to Executive Order CRN 08-01, has established Selection Review Panels to evaluate proposed professional service contracts. Your letter also states that the Council proposes to pass a resolution promoting transparency in the awarding of professional service contracts, requiring the Council and the Mayor to comply with Louisiana Open Meetings Law in the process for evaluating and awarding professional service contracts.
In particular, your letter asks us to address:
 (1) Whether meetings which are held pursuant to Executive Order CRN 08-01 are subject to Louisiana Open Meetings Law (La.R.S. 42:4.1 through La.R.S. 42:13); and
 (2) Whether the New Orleans City Council is authorized to establish, through Ordinance or Motion, standards for open meetings that are equally applicable to the Executive Branch and the Legislative Branch of the City of New Orleans, consistent with the Home Rule Charter, including Section 6-308?
The right of access to public information is guaranteed by La.Const. Art. XII, § 3, which provides, "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." The Open Meetings Law, which can be found at La.R.S. 42:4.1 et seq., was enacted by the *Page 2 
Louisiana Legislature to protect and define the constitutional right of access to observe the deliberations of public bodies. The purpose of this body of law is clearly set forth in La.R.S. 42:4.1 (A), which provides:
 [i]t is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally.
As provided for in La.R.S. 42:5, every meeting of a public body is required to be open to the public, unless closed pursuant to La.R.S.42:6, R.S. 42:6.1 or R.S. 42:6.2.
A meeting is defined as the convening of a quorum of a public body to deliberate or act on a matter over which the public body has supervision, control, jurisdiction, or advisory power. La.R.S.42:4.2(A)(1). A "public body" is defined as:
 village, town, and city governing authorities; parish governing authorities; school boards and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this paragraph.
La.R.S. 42:4.2(A)(2) [Emphasis added].
Your first question asks us whether or not the entity that meets pursuant to Executive Order CRN 08-01 is subject to the Open Meetings Law. This requires an analysis of whether or not it qualifies as a "public body" under the definition in La.R.S. 42:4.2(A)(2).
Section 6-308 of the Home Rule Charter for the City of New Orleans gives the Mayor the authority to establish a process for awarding contracts for professional service, which provides, in pertinent part:
 (5)(b) Contracts for professional services administered by the offices, departments, boards, and other agencies of the Executive Branch shall be awarded on the basis of a competitive selection process which shall be established by executive order of the Mayor.
Section 9 of Executive Order CRN 08-01, entitled "Selection Review Panels," provides that these Panels are "established for the purpose of conducting an independent, objective evaluation of proposals for the provision of professional services." Depending *Page 3 
on the monetary amount of the contract awarded, certain members are designated to participate in the Selection Review Panels. The Executive Order provides that "all discussion and deliberations by the Selection Review Panel in the evaluating and ranking of any proposal shall be deemed confidential, although the completed evaluation forms are available to the public as public records." Executive Order CRN 08-01, Section 9(L).
Black's Law Dictionary (8th Ed. 2004) defines a committee as "[a] subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action" and an advisory committee as "[a] committee formed to make suggestions to some other body or to an official." From the description of the Selection Review Panel in Executive Order CRN 08-01, they are a group to which the Mayor looks to for recommendations or suggestions regarding proposals for professional contracts. They evaluate and consider contract proposals for the provision of professional services submitted to the City of New Orleans, and provide recommendations, which the Mayor can agree with or reject. They clearly qualify as a committee under the definition provided above. The definition of "public bodies" in La.R.S. 42:4.2(A)(2) includes committees created by municipal authorities or city governing authorities.
The City of New Orleans operates under a Home Rule Charter, which provides for a Mayor-Council form of government. Article I, Section 1-102, Home Rule Charter of the City of New Orleans. The Powers and Duties of the Mayor, as described by Article IV, Section 4-206, include, but are not limited to, oversight of the activities of boards and other agencies of City government; enforcement of the provisions of the Home Rule Charter, City ordinances, and all other laws; appointing positions relating to City business, including the Chief Administrative Officer and the City Attorney; submitting an operating budget to the Council for the City; and signing contracts for the City. The Selection Review Panels assist with the evaluations of contract proposals for the provision of professional services. Signing contracts for the City is an enumerated power of the Mayor. The Selection Review Panels are committees of a municipal authority under these particular circumstances, where they assist in the exercise of a mayoral function, and are not dissimilar in function from a planning or zoning commission.
Our office has previously considered the nature of committees created by mayors, and has required certain committees comply with Open Meetings Law. In Atty. Gen. Op. No. 79-1392, our office opined that a committee established by the mayor of the City of Bastrop was a public body required to comply with Louisiana's Open Meetings Law, where such a committee "is appointed by the chief executive of a political subdivision of the State and has been granted policy making and advisory functions in the extremely important area of public finance." Our office opined that the committee appointed by the mayor, in function, could be classified as a subcommittee of the municipal governing authority. *Page 4 
A mayoral advisory committee was required to comply with Open Meetings Law in Atty. Gen. Op. No. 05-0424, where the committee was established by the mayor to provide guidance on matters pertaining to the Police Department in Youngsville. Our office stated, for the purposes of the Open Meetings Law, the meaning of "public body" included a municipal authority with advisory functions. Similarly, in Atty. Gen. Op. No. 89-481, our office stated that a committee appointed by the mayor as chief executive officer was a subcommittee of a municipal authority under La.R.S. 42:4.2(A)(2), and a "public body" under the Open Meetings Law. Also, in Atty. Gen. Op. No. 95-313, our office found that a citizen committee established and appointed by the mayor for discussion, research and advice was subject to the Open Meetings Law.
Because there are no Louisiana cases directly on point, we note the position taken by Florida courts dealing with a similar issue. InSilver Express Company v. District Board of Lower Tribunal Trustees ofMiami-Dade Community College, a contractor had submitted an unsuccessful proposal to provide flight training services and alleged violation of Florida's Open Meetings Law in their proposal consideration process.691 So.2d 1099 (Fla. 3d DCA 1997). In this case, a committee was appointed, composed of college staff and one outside individual, to meet and evaluate the responses to the request for proposals. Where the committee served to "weed through the various proposals, to determine which were acceptable and to rank them accordingly," the court found they were subject to Florida's Open Meetings Laws. Id. at 1100.[1] Similarly, inLeach-Wells v. City of Bradenton, a selection committee was appointed to review proposals received by the City in response to a bid for proposals for a construction project. 734 So.2d 1168 (Fla. 2d DCA 1999). The function of the committee was to rank the top three firms, who would then make presentations to the City Council, and the Council would select the firm to construct the project. Where the committee was comprised of the city clerk, a local engineer, the public works director and a city councilman, it was not disputed that the committee was subject to Florida's Sunshine Law [Open Meetings and Public Records Law]. Id. at 1169. While this office recognizes the non-binding nature of case law in other jurisdictions, we nevertheless find these cases instructive.
Considering the importance of contracts for professional services awarded by the City of New Orleans, the importance of conducting public business in a transparent and open manner, and in light of previous Attorney General opinions, it is the opinion of this office that the Selection Review Panels described in Executive Order CRN 08-01 are public entities as defined by La.R.S. 42:4.2. Therefore, under the facts you presented in your request, the Selection Review Panels must comply with Open Meetings Law in evaluating proposals for the provision of professional services. *Page 5 
Notwithstanding our opinion that the Selection Review Panels are subject to the Open Meetings Law, the Panels may conduct portions of their meetings in executive session, if such executive sessions are conducted in accordance with La.R.S. 42:6.1. We note that the Panels' ability to hold executive session is governed by La.R.S. 42:6.1, and not by any executive order of the mayor.
We note that La.R.S. 42:6.1 (A) provides, in pertinent part:
 A public body may hold an executive session pursuant to R.S. 42:6 for one or more of the following reasons:
 (1) Discussion of the character, professional competence, or physical or mental health of a person, provided that such person is notified in writing at least twenty-four hours before the meeting and that such person may require that such discussion be held at an open meeting, and provided that nothing in this Subsection shall permit an executive session for discussion of the appointment of a person to a public body. In cases of extraordinary emergency, written notice to such person shall not be required; however, the public body shall give such notice as it deems appropriate and circumstances permit.
 (2) Strategy sessions or negotiations with respect to collective bargaining, prospective litigation after formal written demand, or litigation when an open meeting would have a detrimental effect on the bargaining or litigating position of the public body.
 [. . .]
 (10) Or any other matters now provided for or as may be provided for by the legislature.
Our office has also recognized the obligation to discuss any information which is "confidential" in executive session. As our office stated in Atty. Gen. Op. No. 05-0065, "[i]f the records are subject to a privacy claim or are privileged under the Public Records Act, then La.R.S. 42:6.1 (A)(9) [which exception is now 42:6.1(A)(10)] may be interpreted to authorize an executive session to discuss the contents of the privileged records." In Atty. Gen. Op. No. 88-91, our office addressed the applicability of the Public Records Act to information solicited by a state agency through a request for proposal, as provided for by La.R.S. 39:1503. Our office stated that for general purposes, "bids for public contracts are matters of public record and become such upon receipt by the state." Id. However, citing Atty. Gen. Op. No. 87-320, our office also noted that "certain financial information must be exempted from disclosure due to *Page 6 
privacy considerations guaranteed by Article I, § 5 of the Louisiana Constitution of 1974."[2]
Our office addressed proprietary, financial and statistical information which may be protected from disclosure in Atty. Gen. Op. No. 82-860, in which our office stated:
 The threshold determination is whether a reasonable expectation of privacy exists against disclosure of information. If so, the public interest in obtaining the document must be weighed against the interest in privacy. Webb v. City of Shreveport, 371 So.2d 316
(La.App. 2nd Cir. 1979), writ denied 374 So.2d 657.
 Proprietary, financial and statistical information may `pertain to the business of the private person, firm or corporation' (R.S. 44:4(3)) and may therefore be confidential. If in the exercise of reasonable discretion by the responsible public officer, specific information contained in files in the custody of the Department is classified as confidential in nature, then it is out opinion that such record or the parts thereof so classified come within the scope of R.S. 44:4(3).
However, we note that any discussions in executive session must be limited to what is permitted by the Open Meetings Law. As required by La.R.S. 42:6, "no final or binding action may be taken during an executive session." Therefore, although a person or firm may be properly discussed in executive session for one of the reasons authorized by the Open Meetings Law, any binding action taken with respect to such person or firm must be taken in an open meeting.
Your second question asks us to address whether the New Orleans City Council is authorized to establish, through Ordinance or Motion, standards for open meetings that are equally applicable to the Executive Branch and the Legislative Branch of the City of New Orleans, consistent with the Home Rule Charter, including Section 6-308, pertaining to contracts to which the City is a party. The Louisiana Constitution provides:
 A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution. *Page 7 
La.Const. Art. VI, § 5(E) [Emphasis added].
As our office stated in Atty. Gen. Op. No. 02-0258, a Home Rule Charter may impose more stringent requirements than the Louisiana Constitution or general law, but may not conflict with or supersede either.
Consistent with the view that the Selection Review Panels are subject to Open Meetings Law, the New Orleans City Council is authorized to establish standards for open meetings that are equally applicable to the Executive Branch and the Legislative Branch of the City of New Orleans, as long as such standards do not conflict with or supersede the Louisiana Constitution or the Open Meetings Law. It is important to note, as previously mentioned, that Section 6-308 of the Home Rule Charter of the City of New Orleans gives the Mayor of New Orleans the authority to establish a competitive selection process by executive order for contracts for professional services administered by the offices, departments, boards, and other agencies of the Executive Branch. The Council's proposals to pass resolutions promoting transparency in the awarding of professional service contracts is permissible because the Louisiana Constitution and the Louisiana Revised Statutes require transparency from any public body falling within the definition of La.R.S. 42:4.2(A)(2), and a committee created pursuant to an executive order authorized by the Home Rule Charter must comply with requirements imposed by Louisiana law.
We hope that this opinion has adequately addressed the legal issues that you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
 With best regards,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:___________________
 Emalie A. Boyce
 Assistant Attorney General
 JDC: EAB
[1] Section 286.011(1) Florida Statutes (1995) provides: All meetings of any board or commission of any state agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings.
[2] This opinion also noted the applicability of La.R.S. 44:4 as the basis for exempted certain financial information, which exempts from the Public Records Act, `. . . any records . . . in the custody or control of any officer, employee, agent, or agency of the state whose duties and functions are to investigate . . . the business of any person, firm or corporation in this state, when the records . . . pertain to the business of the private person, firm, or corporation and are in their nature confidential."